## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Mona Savig,
Robert Savig,

                Plaintiffs,

v.

First National Bank of Omaha, a
foreign corporation,
Messerli & Kramer, P.A.,

                Defendants.

**Civil File No. 09-CV-00132 (JNE/RLE)**

**MEMORANDUM IN SUPPORT OF MOTION OF DEFENDANTS MESSERLI & KRAMER, P.A., AND FIRST NATIONAL BANK OF OMAHA FOR JUDGMENT ON THE PLEADINGS, OR SUMMARY JUDGMENT, OR TO CERTIFY QUESTIONS OF LAW TO THE MINNESOTA SUPREME COURT, OR FOR A STAY OF PROCEEDINGS PENDING RESOLUTION OF CERTIFIED QUESTIONS**

## INTRODUCTION

Defendants First National Bank of Omaha and Messerli & Kramer, P.A., submit this memorandum in support of their motion.  The motion is made for relief on four alternative bases, as follows:

1. Judgment on the pleadings;
2. Summary judgment;
3. Certification of a question of law to the Minnesota Supreme Court; or
4. For a stay of proceedings pending resolution of a certified question.

## ISSUE

Do the Plaintiffs bear the burden of establishing the source of the funds in their joint bank account?

## QUESTIONS PROPOSED FOR CERTIFICATION

1.   Under Minnesota Statutes section 524.6-203(a), when a creditor's levy, garnishment, or other method of attachment reaches a multiparty account, which party or parties bear the burden of proving that the account is jointly held?

2.   When a creditor's levy, garnishment, or other method of attachment reaches a multiparty account, which party or parties bear the burden of proving the relative contributions to the account?

3.   If  the depositors bear that burden and fail to meet it in state court, may they commence a separate action in federal court addressing the same issues?

4.   When a person who is not a debtor alleges an interest in the funds in the account, and fails to prove his or her interest in state court, may he or she commence a separate action in federal court addressing the same issues?

5.   If that burden must be met in the state court action, and the parties fail to meet their burden in the state court, does attachment of the funds constitute a tortious act by the creditor or the creditor's attorney?

## FACTS

**A.      Description of the Parties.**

Plaintiff Mona Savig (hereinafter "Judgment Debtor" or "Mona Savig") is an individual who applied for consumer credit card account with a promotional offer through First National Bank, South Dakota (hereinafter "FNBSD").  Plaintiff Robert Savig ("Robert Savig") is Mona Savig's husband.

Defendant First National Bank of Omaha (hereinafter "Defendant" or "FNBO") is the issuer and owner of Mona Savig's account.  Defendant Messerli & Kramer, P.A. (hereinafter "Defendant" or "Messerli"), is a law firm that represented FNBO in a suit in state court to recover amounts owed by Mona Savig.

**B.      Factual Narrative.**

Mona Savig applied for and opened a credit account with a promotional offer from FNBSD.[1]  (Pls.' Compl. ¶ 8; Defs.' Ans. ¶ 9.)  She failed to make payments as required by the contract governing the account.  (Pls.' Compl. ¶¶ 8, 9; Defs.' Ans. ¶ 9.)

Mona Savig failed to pay the debt, and FNBO commenced a state court action for breach of the account contract on or about January 29, 2004.  (Aff. of Weber ¶ 6.) Judgment was entered against Mona Savig on or about March 24, 2004.  (Pls.' Compl. ¶ 9.)

---

[1] When the credit card account was opened, Mona Savig was married to Lowell Bjerke and was known as Mona Bjerke.  For convenience, she will be referred to as Mona Savig herein.  The credit card account was in the names of both Lowell and Mona, and judgment was entered against each of them.  However, Lowell's liability is immaterial to this action.

Pursuant to the judgment entered against Mona Savig, Defendant Messerli, as attorney for Defendant FNBO, served a garnishment summons on Midwest Bank seeking disclosure of "non-exempt indebtedness, money, or other property due or belonging to the debtor," Mona Savig.  (Pls.' Compl. ¶ 10; Aff. of Weber ¶ 8, Ex. A.)

Midwest Bank confirmed that it did possess money due and owing to Mona Savig. (Aff. of Weber ¶ 9, Ex. B.)  Subsequently, Midwest Bank withheld $2,003.78 from the account, and remitted it to Defendant Messerli, in partial payment of FNBO's judgment against Mona Savig.  (Pls.' Compl. ¶ 10; Defs.' Ans. ¶ 10.)

Defendant Messerli provided the statutory "Exemption Claim Form," in order for Mona Savig to claim any assets exempt from attachment.  (Aff. of Weber ¶ 11, Ex. A at 3-6.)  She did not claim any exemptions, did not request a hearing, and Robert Savig did not intervene to claim any interest in the funds pursuant to Minnesota Statutes section 571.83. (*See* Pls.' Compl.; Defs.' Ans. ¶¶ 12-17; Aff. of Weber ¶¶ 12-14.)

Robert Savig did call Defendant Messerli and state that all of the funds were his. (Aff. of Weber ¶¶ 15-16.)  Defendant Messerli's employees asked Mr. Savig to show the source of the funds so it could return the portion of the funds in the account that were his. (Aff. of Weber ¶ 17.)  Mr. Savig hung up on the employee and refused to provide further information.  (Aff. of Weber ¶ 18.)

Evidently, a few days before the call, Mr. Savig while surfing the internet had come upon a website maintained by attorney Samuel G. Glover.  (*See* Aff. of Weber Ex. C.)  The site summarizes the Court's Order in *Phillips v. Messerli & Kramer, P.A.*, 08-

CV-04419 (DWF/JJG), which shares a factual underpinning with this case.  (*Id.*)  There,

Mr. Savig wrote:

> I am in this same exact situation!! Same lawyers too!! What should I do?

(*Id.*)  And Mr. Slade replied:

> Sam deserves a huge round of applause on this issue. His recent win has probably
> caused more panic in the small little things debt collectors use as hearts then any
> other court decision in a long time. They are up in arms, screaming and pulling
> their hair.  But they have the money and the banks on their side, so it may be just a
> matter of time until the law is "fixed."

(*Id.*)  Shortly thereafter, Mr. Slade filed this case.

Plaintiffs have alleged that the funds were attached from a bank account held jointly

by Robert and Mona Savig.  (Pls.' Compl. ¶ 11.)  Specifically, Plaintiffs allege that only

$595.73 of the garnished funds belonged to Mona Savig, $842.37 belong to Robert Savig,

and the ownership of $565.68 cannot be determined, contradicting Mr. Savig's previous

statements to Messerli.  (Pls.' Compl. ¶¶ 11, 18.)  Plaintiffs assert that the attachment of

funds violates various provisions of the FDCPA, and amounts to the torts of conversion,

wrongful levy, and invasion of privacy by intrusion upon seclusion.  Because Defendants

did not violate the FDCPA or Minnesota law, judgment should be granted in favor of

Defendants.

## ARGUMENT

### I.  LEGAL STANDARDS

### A.  Judgment on the Pleadings.

When considering a motion for judgment on the pleadings or a motion to dismiss for failure to state a claim, the court generally must ignore materials outside the pleadings, but may consider some materials that are part of the public record, do not contradict the complaint, or are necessarily embraced by the pleadings.  *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).  On a motion for judgment on the pleadings, the court accepts as true all facts pled by the nonmoving party and draws all reasonable inferences from the pleadings in that party's favor.  *Franklin High Yield Tax-Free Income Fund v. County of Martin, Minn.*, 152 F.3d 736, 738 (8th Cir. 1998).  However, a motion for judgment on the pleadings does not test the Plaintiff's likelihood of ultimate success, rather the legal sufficiency of the complaint.  *LaManque v. Massachusetts Dep't of Employment & Training*, 3 F. Supp. 2d 83, 89 (D. Mass. 199

### B.  Summary Judgment.

Summary judgment is appropriate when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  When considering a motion for summary judgment, any inferences to be drawn from the facts must be viewed in the light most favorable to the nonmoving party.  *Id.*  The moving party holds the initial burden of demonstrating the absence of a disputed issue of material fact.  *Id*. at 323.

538459.4

Once the moving party has carried its burden, the non-moving party must do more than simply show there is some metaphysical doubt as to the material facts. *Matsushita v. Zenith*, 475 U.S. 574, 586 (1986). The non-moving party must produce more than a mere scintilla of evidence to successfully oppose summary judgment. *Id.* A fact is material for purposes of summary judgment only if it might affect outcome of case under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"[A] complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. In such situations, there can be no genuine issue of material fact. *Id.* Thus, on issues that the nonmoving party will have the burden of proof, it is his or her responsibility to confront the motion for summary judgment with an affidavit or other similar evidence. *Liberty*, 477 U.S. at 256.

## II.   PLAINTIFFS HAVE FAILED TO STATE A CLAIM ON WHICH RELIEF MAY BE GRANTED.

The sole issue in this case is whether, under the Minnesota Multiparty Accounts Act, a judgment creditor and its attorneys bear the burden of determining whether funds in a bank account are jointly held before service of a garnishment summons on that bank. Because that burden falls to the depositors, and they have not requested a hearing in order to offer proof on the question, Defendants are entitled to judgment on the pleadings, or summary judgment.

In the ordinary course, on issues of state law, the federal court is obliged to adopt the rule which it believes the state court would apply. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). In the absence of a definitive ruling by the highest state court, a federal

court may consider analogous decisions, considered dicta, scholarly works, and any other reliable data tending convincingly to show how the highest court in the state would decide the issue at hand. *City of Jefferson City v. Cingular Wireless*, 531 F.3d 595, 599 (8th Cir. 2008).

## A.      Origin of the Multiparty Accounts Act.

The legislation known as the Multiparty Accounts Act has a tangled history in Minnesota.  It originally comes from the Uniform Probate Code as promulgated by the National Conference of Commissioners on Uniform State Laws ("NCCUSL").  U.P.C. Art. VI, § 1 (1969).  The Minnesota legislature adopted substantial parts of the uniform code over the period from 1973 to 1975, but codified them in varying places in the statutes.  The Multiparty Accounts Act was adopted in Minnesota in 1973, and was originally codified separately from the rest of the uniform code, at chapter 528 of the Minnesota Statutes.

In 1989, the NCCUSL authored a revision of Article Six of the Uniform Probate Code, which includes the uniform law from which our Multiparty Accounts Act is derived.  As part of the revision, the provisions that had appeared in Article Six, section one of the Uniform Probate Code, were moved to Article Six, section two.  In response to this change in the uniform law, the Minnesota State Bar Association's Probate and Trust Law Section appointed a Special Committee to study the changes proposed by the Commissioners.  The Special Committee recommended renumbering the Multiparty Accounts Act to position it within the probate code, and consistent with the uniform

probate code's numbering system.  At the Special Committee's urging, the state legislature renumbered the law to section 524.6-203(a), where it is presently codified.

Complicating matters somewhat, the 1989 revision by the NCCUSL included the promulgation of a separate uniform law that duplicates some of the provisions of the Uniform Probate Code.  This Uniform Multiple-Person Accounts Act is "a free-standing version of Part 2 (formerly Part 1) of Article VI of the Uniform Probate Code, as revised in 1989."  Uniform Multiple-Person Accounts Act, Prefatory Note, 1989.

Thankfully, only a single provision of the Multiparty Accounts Act is at issue in this case.:

> A joint account belongs, during the lifetime of all parties, to the parties in proportion to the net contributions by each to the sums on deposit, unless there is clear and convincing evidence of a different intent.

Minn. Stat. § 524.6-203(a).  The language of this provision is unchanged since the original Minnesota adoption in 1973.  It is identical to the language as it appeared in Minnesota Statutes section 528.04(a) prior to 1994.  It is identical to the language as it appeared in Article Six, section 1 of the 1969 Uniform Probate Code.  It is identical to the language as it appears in Article Six, section 2 of the 1989 Uniform Probate Code.  It is identical to the language as it appears in the Uniform Multiple-Person Accounts Act. Accordingly, cases interpreting any of those sources are of considerable aid in determining the meaning of Minn. Stat. § 524.6-203(a).

**B.**     **Application of the Multiparty Accounts Act in Minnesota and *Enright*.**

Minnesota Statutes section 524.6-203(a) has received increased attention in the wake of the Minnesota Supreme Court's decision in *Enright v. Lehmann*, 735 N.W.2d

326 (Minn. 2007). *Enright* addressed the question of what the judgment creditor has to prove *after* the source of the deposits in a joint account is known. Specifically, the *Enright* Court held:

> that the plain language of the Multi-Party Accounts Act, Minn.Stat. § 524.6-203(a) (2006), prevents a creditor from garnishing funds in a joint account **not contributed by the debtor** unless the creditor proves by clear and convincing evidence that the depositing party intended to confer ownership of the funds on the debtor.

*Enright*, 735 N.W.2d at 328 (emphasis added). The *Enright* opinion uses deliberately conditional language. Only if the funds are not contributed by the judgment debtor does the burden fall to the judgment creditor to show that the depositor intended to confer ownership on the judgment debtor. *Enright* simply does not speak to which party bears the burden with respect to proving *who contributed the funds* to the account in the first place. The *Enright* Court did not have that question before it because those facts were not in dispute. *Enright*, 735 N.W.2d at 329 ("Lehmann asserts, and Enright agrees, that Zandra [the non-debtor] deposited all the money in the joint accounts").

The litigants in *Enright* proceeded under the assumption that the burden to show net contributions rested with the depositors. There, the judgment debtor, Robert H. Lehmann, presented in the garnishment hearing "uncontroverted evidence that all of the funds in the garnished joint bank accounts were contributed by [the non-debtor] Zandra Lehmann." (*See* Defs.' App. at 20, 23, 25 [¶¶ 22-23 of Affidavit of Robert H. Lehmann; ¶ 6 of Affidavit of Zandra Lehmann, ¶ 4 of Affidavit of Lara Low]); Defs.' App. 27-30 [Statements in Robert H. Lehmann's appellate briefs that "Appellant presented uncontroverted evidence that Appellant's wife contributed all the funds in the joint

accounts," "Appellant presented uncontroverted evidence that all of the funds in the garnished joint bank accounts were contributed by Zandra Lehmann...," " Appellant presented uncontroverted evidence that Zandra Lehmann contributed all of the funds in the garnished joint bank accounts...," "Appellant presented uncontroverted evidence that his wife Zandra contributed all of the funds in the joint account at issue."]) Understandably, the judgment debtor only had to present evidence if it was his burden to prove the relative contributions to the account.

The Minnesota Supreme Court approved this practice in *Enright* by not overruling it.  At minimum, the issue was not before the *Enright* Court and, accordingly, certification is appropriate.

Furthermore, the prevailing party in *Enright* noted that the Minnesota Department of Revenue also followed this rule, insofar as it "permitted taxpayers to present proof of who made contributions to joint accounts because the [Multiparty Accounts Act] prevents garnishment of funds not contributed by the taxpayer."  (*Enright*, Appellant's Reply Brief at 6.)

**C.     Statutes are Construed to Effect the Intent of the Legislature.**

The Court's primary objective in statutory interpretation is to ascertain the legislative intent from the statutory language and, if possible, to give effect to that intent. *United of Omaha v. Business Men's Assurance Co. of America*, 104 F.3d 1034, 1037 (8th Cir. 1997).  Where a question of state law is unanswered by the courts of that state, a federal court interpreting that law is bound by the state's rules of statutory construction. *Gershman v. American Cas. Co.*, 251 F.3d 1159, 1162 (8th Cir. 2001).  The intention of

538459.4

the drafters of a uniform act becomes the legislative intent upon enactment. *Shields v. Goldetsky (In re Butler)*, 552 N.W.2d 226, 231 (Minn. 1996). The Minnesota legislature expressed its intent in the plain language of the statute. However, in addition to the plain language of the law itself, the NCCUSL issued drafters' commentary on its provisions.

The Multiparty Accounts Act directs that the burden of proving net contributions falls to the depositors. The official commentary to the law states that it "contains no provision dealing with division of the account when *the parties* fail to prove net contributions." Comment, Uniform Probate Code, 8 U.L.A. § 6-103 (1998) (emphasis added). As used in that sentence, "the parties" refers to parties *to the account*. *Id.* Thus, it is the burden of the parties to the account to prove net contributions. Accordingly, the drafters of the law in question expressed their intent that the depositors, not the creditor, are expected to prove the relative contributions to a joint account.

**D.     Uniform Laws are Construed Uniformly.**

The fundamental purpose of uniform laws is to achieve conformity in interpretation. *Holiday Inns, Inc. v. Olsen*, 692 S.W.2d 850, 853 (Tenn. 1986) (describing this purpose as "axiomatic"). The Minnesota legislature has made the directive explicit, such that "[l]aws uniform with those of other states shall be interpreted and construed to effect their general purpose to make uniform the laws of those states which enact them." Minn. Stat. § 645.22, *cited in Enright*, 735 N.W.2d at 331. In addition, the text of the Uniform Probate Code, as well as its statutory adoption in Minnesota, both admonish that one of the "the underlying purposes and policies" of the

Code is "to make uniform the law among the various jurisdictions."  U.P.C. § 1-102(b)(4); Minn. Stat. § 524.1-102(b)(4).

The Minnesota Supreme Court has recognized this axiomatic purpose.  The Court holds that "[u]niform laws are interpreted to effect their general purpose to make uniform the laws of those states that enact them."  *Johnson v. Murray*, 648 N.W.2d 664, 668 (Minn. 2002).  Accordingly, the Supreme Court "give[s] great weight to other states' interpretations of a uniform law."  *Id.* (citing *State v. Vail*, 274 N.W.2d 127, 132 n.9 (Minn. 1979).

1.    *Indiana*.

The Indiana Supreme Court saw a comparable set of facts in *Browning & Herdrich Oil Company, Inc. v. Hall*, 489 N.E.2d 988, 992 (Ind. Ct. App. 1986), an analogous case relied upon by the *Enright* Court.  In *Browning*, it was an "undisputed fact" that "funds for...the account were contributed solely by Opal [the non-debtor]," and that Gerald, the judgment debtor, had not contributed any funds to the account. *Browning*, 489 N.E.2d at 989.

*Browning* interpreted the exact same statute at issue in *Enright* and at issue in this case.  Indiana Code section 32-4-1.5-3(a) then read:

> A joint account belongs, during the lifetime of all parties, to the parties in proportion to the net contributions by each to the sums on deposit, unless there is clear and convincing evidence of a different intent.

Minnesota Statutes section 524.6-203(a) reads:

> A joint account belongs, during the lifetime of all parties, to the parties in proportion to the net contributions by each to the sums on deposit, unless there is clear and convincing evidence of a different intent.

Operating from the exact same statutory mandate, a uniform law that is by definition and

purpose intended to be uniformly construed across the adopting jurisdictions, the Indiana

Supreme Court, in a concurring opinion, reached a conclusion directly opposite that of

this Court.  There, Justice Ratliff held:

> I agree that under the Indiana statute, Indiana Code section 32-4-1.5-3(a),
> ownership of a joint bank account during the lifetime of the parties is
> owned by them in proportion to their contributions. Therefore, only the
> funds in a joint account actually belonging to a judgment debtor may be
> reached by proceedings supplemental, garnishment, or execution in
> satisfaction of the debt.
> * * *
> The question left unanswered by the majority and not addressed by the
> parties is that of the burden of proof on the issue of ownership of the funds
> in the joint account. In other words, must a judgment creditor upon
> discovery of a joint bank account held by his debtor and another be held to
> the burden of proving his debtor's interest, or do the joint depositors bear
> that burden? I believe that burden properly rests with the joint depositors,
> and it has been so held.

*Browning*, 489 N.E.2d at 992 (Ratliff, J., Concurring).  The Multiparty Accounts Act is a

uniform act, and Indiana's interpretation is entitled to great weight.  Interpreting the exact

same statute applicable to this case, a concurring justice in the Indiana Supreme Court

found that the burden of proving relative contributions to a joint account rests with the

depositors.  Accordingly, under the law, the depositors, not the creditor, are expected to

prove the relative contributions to a joint account.

2.    *Nebraska.*

The Multiparty Accounts Act provision at issue was also adopted in Nebraska.

Neb. Rev. Stat. § 30-2703(a) (1985) (repealed 1993).  Like Minnesota's law, the law in

Nebraska then read:

> A joint account belongs, during the lifetime of all parties, to the parties in proportion to the net contributions by each to the sums on deposit, unless there is clear and convincing evidence of a different intent.

Following the same uniform act, a United States District Court sitting in Nebraska required the non-debtor depositors to intervene in order to assert their interest in a garnished joint account, and was affirmed in this determination by the Eighth Circuit Court of Appeals.  *See Giove v. Stanko*, 882 F.2d 1316, 1318 (8th Cir. 1989) ("*Giove II*"); *Giove v. Stanko*, No. CV-86-L-582, 1988 WL 80872 (D. Neb. July 20, 1988) ("*Giove I*") (Defs.' App. at 1).  The district court concluded that the non-debtor depositors must intervene in the garnishment action under Nebraska Revised Statute section 25-1030.03[2],

---

[2] Nebraska Statutes section 25-1030.03 fulfills the same function as Minnesota Statutes section 551.06, subd. 16.  They both govern the conduct of a party asserting an interest in property that is subject to a postjudgment proceeding.  The Nebraska Statute reads as follows:

> *Garnishment; ownership of property; intervention; trial.*
> Any person claiming ownership of any money or property sought to be reached in the possession or under the control of the garnishee as the property of the defendant in the original action may intervene in the garnishment proceedings by a suitable pleading and set up facts showing that the debt or the property with which it is sought to charge the garnishee is the property of such intervenor. The defendant in the original action may by a suitable pleading filed in the garnishment proceedings set up facts showing that the debt or the property with which it is sought to charge the garnishee is (1) exempt from execution, or (2) for any other reason is not liable for plaintiff's claim. If issue on such intervention or on such pleading by the defendant in the original action is joined by the plaintiff, it shall be tried with the issues as to the garnishee's liability. If such debt or property or any part thereof is found to be the property of the intervenor, or is found to be exempt or not liable, the garnishee shall be discharged as to that part which is exempt or not liable.

Neb. Rev. Stat. § 25-1030.03.  The Minnesota Statute similarly states:

538459.4

and that the burden rests with the depositors to prove contributions to the account. *Giove I*, at *6. There, the district court held:

> As the comment to the "net contributions" rule indicates, "The [statute] contains no provision dealing with division of the account when the parties fail to prove net contributions. The omission is deliberate." Comment to Neb. Rev. Stat. § 30-2703. Because the newer code does not purport to change the law on this point, I conclude take[3] prior law still applies to place the burden upon the intervenor to establish ownership. Thus, the burden is on [the depositor/intervenor] to demonstrate the extent of the net contributions which are not attributable to the defendant judgment debtors.

*Giove I*, at *6. The Eighth Circuit explicitly affirmed this analysis of the burden of proving relative contributions to a joint account. *Giove II*, 882 F.2d at 1319. The Multiparty Accounts Act is uniform act, and the District Court and Eighth Circuit interpretations are entitled to great weight. Interpreting the exact same statute applicable to this case, those courts found that the burden of proving relative contributions to a joint account rests with the depositors. Accordingly, under the law, the depositors, not the creditor, are required to prove the relative contributions to a joint account.

*3.    Ohio.*

The provision of the Multiparty Accounts Act at issue in this case is also adopted in Ohio. *Thompson v. Botts (In re Thompson)*, 423 N.E.2d 90, 94 (Ohio 1981); *cf. Wright*

---

**Joinder and intervention by persons in interest.** If it appears that a person, who is not a party to the action, has or claims an interest in any of the disposable earnings, other indebtedness, or money, the court shall permit that person to intervene or join in the execution proceeding under this chapter. If that person does not appear, the court may summon that person to appear or order the claim barred. The person so appearing or summoned shall be joined as a party and be bound by the judgment.

[3] [*sic*] Probably intended "that."

*v. Bloom*, 635 N.E.2d 31, 39 (Ohio 1994) (overruling *Thompson* on some points, but stressing that the ownership during lifetime provision was unchanged).

Rather than a legislative enactment, the law on this point was adopted by the Ohio Supreme Court. The *Thompson* Court embraced the language of the Uniform Probate Code and held, identically to the law of Minnesota, that:

> A joint account belongs, during the lifetime of all parties, to the parties in proportion to the net contributions by each to the sums on deposit, unless there is clear and convincing evidence of a different intent.

The decision in *Ingraham v. Hocking Valley Bank*, 708 N.E.2d 232 (Ohio Ct. App. 1997) interpreted this law, and may be most informative given the facts of the case at bar. *Enright*, *Browning*, *Giove*, and nearly every other case interpreting the Multiparty Accounts Act as it applies to judgment creditors did so on appeals from the postjudgment proceedings in the originating case between judgment creditor and judgment debtor. *Ingraham*, however, arose like this case: Rather than intervene in the postjudgment proceeding, the husband of a judgment debtor sued the creditor, the creditor's attorney, and the bank that held the joint account. *Ingraham*, 708 N.E.2d at 234. Among other claims, the husband sued for wrongful attachment and conversion under state law. *Id.*

The trial court in *Ingraham* granted summary judgment to the creditor, the creditor's attorney, and the bank. *Id.* The judgment was affirmed on appeal. *Id.* The appellate court held, under § 6-103 of the Uniform Probate Code, the same statute at issue here, that the bank, the creditor, and the creditor's attorney did not have a duty to determine the net contributions of the joint depositors. *Id.* The Court explicitly held that "[the judgment debtor]'s wife had a right to request a hearing in the garnishment action."

*Id.* at 239. "The garnishment hearing is the debtor's opportunity to present evidence that other people own funds in the account." *Id.* There, because the depositors did not request a garnishment hearing, and did not present evidence at a garnishment hearing of the net contributions to the account, they failed to meet their statutory burden. *Id.* at 238 ("The statutes place the burden of resolving ownership disputes on the joint account holders themselves"). Accordingly, the subsequent action against the creditor, the creditor's attorney, and the bank was dismissed. Notably, the Court also held that litigation immunity shielded the creditor's attorney from liability. *Id.* ("An attorney is immune from liability to third persons arising from his performance as an attorney in good faith on behalf of, and with knowledge of his client, unless such third person is in privity with the client or the attorney acts maliciously.")

The Multiparty Accounts Act is a uniform act, and Ohio's interpretation is entitled to great weight. Interpreting the exact same statute, the Ohio Supreme Court found that the burden of proving relative contributions to a joint account rests with the depositors. Accordingly, under the law, the depositors, not the creditor, are required to prove the relative contributions to a joint account.

**E.     The Minnesota Appellate Court's Unreported Decision in *Bar-Meir v. North American Die-Casting Association* Holds that the Burden of Proving Deposits to a Joint Account Rests with the Depositors.**

In Minnesota courts, the unpublished opinions of Minnesota appellate courts are not binding precedent, but they may be persuasive. Minn. Stat. § 480A.08, subd. 3; *Dynamic Air, Inc. v. Bloch*, 502 N.W.2d 796, 800-01 (Minn. Ct. App. 1993). Accordingly, an unpublished decision of the Minnesota Court of Appeals is among the

"analogous decisions, considered dicta, scholarly works, and any other reliable data" that

another court may rely on when determining how the Minnesota courts would decide the

issue. *Cingular Wireless*, 531 F.3d at 599.

>  The Minnesota Court of Appeals held as follows in an unpublished case in 2003:

>>  Appellant argues in the alternative that the funds are exempt because they
>>  were put into the account by his wife, not by himself.  Again he fails to
>>  meet his burden of proving that his wife deposited the funds: there is no
>>  evidence of who contributed to the account.  Because appellant has failed to
>>  meet his statutory burden of proving his claim that the funds in the account
>>  are exempt, respondent is entitled to proceed with garnishment pursuant to
>>  law.

*Bar-Meir v. North American Die Casting Association,* No. C6-03-331, 2003 WL
22015444, at *2 (Minn. Ct. App. August 26, 2003) (Defs.' App. at 15).  The Court
then stated:

>>  It is unnecessary for us to decide a possible conflict between Minn. Stat. §
>>  524.6-203 (2002) (joint account belongs to parties in proportion to net
>>  contributions by each party), and *Park Enters., Inc. v. Trach*, 233 Minn.
>>  467, 467, 47 N.W.2d 194, 195 (1951) (joint account can be garnished for
>>  individual debt of one depositor).  Any conflict becomes irrelevant in the
>>  instant case because the burden remains with appellant to prove who
>>  contributed what to the account.  Appellant offered no evidence of this.

(*Id.* at *1 n. 2; Defs.' App. at 16).  The relevant facts are the same as this case: one

account-holder was a judgment debtor, and the other was not.  More importantly, the

relevant law was the same.  The Minnesota Court of Appeals recognized that the

Multiparty Accounts Act's rule regarding who bears the burden of proving the intent of a

depositor to confer ownership only comes into play once the source of the deposits is

shown, and the burden of showing the source of those deposits rests with the depositors

themselves.

A previous order of the District Court states that *Bar-Meir*'s holding "flies in the face of the Multiparty Accounts Act."  To the contrary, the Court of Appeals in *Bar-Meir* explicitly acknowledged the very provision of the Multiparty Accounts Act at issue in this case.  Minnesota Statutes section 524.6-203 looked the same in 2003, when the *Bar-Meir* Court interpreted it, as it does now. The Court of Appeals recognized that only if the account-holders have proven their deposits does the burden of proving intent to confer ownership fall to the creditor.  The *Bar-Meir* decision correctly applied the law.  Had Bar-Meir, or his wife, shown in the post-judgment proceeding that she was the source of the funds, *then* section 524.6-203 would have required North American Die Casting to prove that, when Bar-Meir's wife deposited the funds, she intended to confer ownership on him.

*Bar-Meir* and *Enright* are mutually consistent.  The key difference between them is that in *Enright* the source of the deposits was known, while in *Bar-Meir* it was not.  In *Enright*, the depositors proved the source of the deposits.  (Defs.' App. at 20, 23, 25, 27-30)  Accordingly, this triggered a burden on the creditor to prove by clear and convincing evidence that the non-debtor depositor intended to confer ownership of the deposited funds on the judgment debtor.  Conversely, in *Bar-Meir*, the depositors did *not* prove the source of the deposits.  (Defs.' App. at 16.)  Accordingly, as the Court plainly stated, there was no occasion to evaluate the depositors' intent under section 524.6-203.

*Bar-Meir* is a bellwether for the *Enright* decision.  In *Bar-Meir* it was "unnecessary for [the court] to decide" the "possible conflict" between section 524.6-203 and *Park Enterprises*.  Precisely that conflict was resolved four years later by the

538459.4

Minnesota Supreme Court, through its holding in *Enright* that *Park Enterprises* was abrogated in favor of the Multiparty Accounts Act. Had Genick Bar-Meir offered proof that the funds in the account were deposited by his wife, his case would in all likelihood have abrogated *Park Enterprises*. However, the clear result of *Bar-Meir* is that the depositors must first prove the relative deposits to the joint account, before application of the Multiparty Accounts Act requires the creditor to prove the intent of the depositor.

**F.      *Phillips v. Messerli & Kramer, P.A.*, is not Controlling.**

This holding of *Bar-Meir* is consistent with those of the *Enright, Browning*, *Giove*, and *Ingraham* cases. In fact, there appears to be no case interpreting the provision at issue in any other way, with the exception *Phillips v. Messerli & Kramer,* a case currently pending before the United States District Court for the District of Minnesota. In that case, the Court denied the Defendants' motion to dismiss, and issued an opinion stating that the burden of proving net deposits to a joint account falls on the creditor. The decision has precipitated several new lawsuits on the same basis, including this one.

However, the District Court's decision is not binding on courts of equal rank. *Muller v. Allen*, 514 F.Supp. 998, 1001 (D. Minn. 1981). A district judge is not bound by previous decisions of a sister court in the same district. *Threadgill v. Armstrong World Industries, Inc.*, 928 F.2d 1366, 1371 (3d Cir. 1991). Where a second judge believes that a different result may obtain, independent analysis is appropriate. *Id.*

In this case, particularly compelling grounds exist for a different result. As shown above, the interpretation of law expressed in *Phillips* is contrary to the intent of the Minnesota legislature, unsupported by the case law of Minnesota or any other

jurisdiction, contrary to interpretations of the same uniform law in other jurisdictions which have adopted it, and contrary to the interpretation expressed in an unpublished decision by the Minnesota Court of Appeals.  Instead, the clear thrust of the law is that the burden of proving net deposits rests with the depositors themselves.

Ultimately, Defendants have shown that Plaintiffs have failed to state a claim upon which relief may be granted.  The intent of the Minnesota legislature in enacting Minnesota Statutes section 524.6-203(a), as expressed in the plain language of the statute and the official commentary promulgated by the drafters of the uniform law, shows that the burden of proving net contributions to the account rests with the depositors, not the judgment creditor.  Likewise, the intent of the Minnesota legislature is reflected in the enactment of a uniform law, the axiomatic purpose of which is conformity of interpretation.  Because every jurisdiction that has interpreted this aspect of the law has found that the burden of proving net contributions to the account rests with the depositors, the same result is compelled here.  Accordingly, Defendants are entitled to judgment on the pleadings, or summary judgment.

## III.    ALTERNATIVELY, THE COURT SHOULD CERTIFY THE RELEVANT QUESTIONS OF LAW TO THE MINNESOTA SUPREME COURT.

Though this case is ripe for judgment on the pleadings or summary judgment, if the Court deems the issue of state law sufficiently novel, it may certify the relevant questions of law to the Minnesota Supreme Court.  In the ordinary course, on issues of state law, the federal court is obliged to adopt the rule which it believes the state court would apply.  *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).  The decision to certify a

538459.4

given question, however, rests in the sound discretion of the federal court.  *Lehman Bros. v. Schein*, 416 U.S. 386, 391 (1974).

Minnesota has adopted the Uniform Certification of Questions of Law Act which provides that the Minnesota Supreme Court may answer questions of law certified to it by, among others, a United States District Court:

> if the answer may be determinative of an issue in pending litigation in the certifying court and there is no controlling appellate decision, constitutional provision, or statute of this state.

Minn. Stat. 480.065, subd. 3.  The Eighth Circuit has articulated several factors to guide the Court's discretion when deciding whether to certify a question of state law.  *Hatfield v. Bishop Clarkson Memorial Hosp.*, 701 F.2d 1266, 1267 (8th Cir. 1983).  The factors include:

> 1. Existence of sufficient sources of state law;
> 2. Considerations of comity, including whether the issues are primarily state or federal, and the likelihood of recurrence of the particular issue;
> 3. Closeness of the question, and;
> 4. Prejudicial effect of delay.

*Id.* at 1268-73 (citing *Florida ex rel. Shevin v. Exxon Corp.*, 526 F.2d 266, 274-75 (5th Cir. 1976).

As described *supra* in Section II, every case on this particular issue has determined that the burden of proving net contributions to a joint account rests with the depositors. However, because this is a paradigmatic state law issue, the Court can certify the question of law and allow the state court to render a final and binding interpretation of Minnesota Statutes section 524.6-203(a) before proceeding further in this matter.

538459.4

**IV.     ALTERNATIVELY, THE COURT SHOULD STAY PROCEEDINGS IN THIS ACTION PENDING RESOLUTION OF THE RELEVANT QUESTIONS OF LAW AS CERTIFIED IN OTHER ACTIONS.**

A number of cases have recently been filed in this district premised on the same theory of liability.[4]  Because the question of law these cases present has not been directly spoken to by decisions of the Minnesota courts, there are motions to certify questions of law pending in some of the cases.  A definitive answer from the Minnesota Supreme Court will obviate the need for further litigation in this case.  Accordingly, the Court can stay proceedings in this matter under the motions to certify the relevant questions of law are resolved.

**CONCLUSION**

Defendants have shown that no genuine issues of material fact exist and they are entitled to judgment as a matter of law.  Therefore, Defendants respectfully request that the court grant their motion for judgment on the pleadings or summary judgment.

Alternatively, because the question of law presented by this case is sufficiently novel, this Court should certify the question to the Minnesota Supreme Court.

Finally, in the alternative, because motions for certification are filed or to be filed in several other cases presenting the same question of law, proceedings in this case should be stayed pending resolution of the questions by the Minnesota Supreme Court.

---

[4] Along with the *Phillips* case discussed above, those cases include the following:
*Billiar v. Atlantic Credit & Fin., Inc.*, 09-CV-00133 (PJS/SRN)
*Schmidt v. Como Law Firm, PA*, 09-CV-00178 (DWF/FLN)
*Ramirez v. Como Law Firm, PA,* 08-CV-04249 (PAM/JJG)

538459.4

**MESSERLI & KRAMER, P.A.**

Dated: March 12, 2009.

By:s/ Truman W. Schabilion
Derrick N. Weber, #241623
Truman W. Schabilion, #388018
3033 Campus Drive, Suite 250
Plymouth, MN 55441
Telephone: (763) 548-7724
Facsimile: (763) 548-7922

ATTORNEYS FOR
DEFENDANTS FIRST
NATIONAL BANK OF OMAHA
AND MESSERLI & KRAMER,
P.A.

538459.4