# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Mona Savig and
Robert Savig,

       Plaintiffs,

v.

First National Bank of Omaha
and Messerli & Kramer, P.A.,

       Defendants.

Civil No. 09-132 (JNE/RLE)
ORDER

---

Nicholas P. Slade, Esq., Barry & Slade, LLC, appeared for Plaintiffs Mona Savig and Robert Savig.

Derrick N. Weber, Esq., and Truman W. Schabilion, Esq., Messerli & Kramer, P.A., appeared for Defendants First National Bank of Omaha and Messerli & Kramer, P.A.

---

This case, which arises from the post-judgment garnishment of bank accounts jointly held by Mona Savig and Robert Savig, a married couple, to satisfy Mona's debts, involves the interplay between Minn. Stat. §§ 571.31-.931 (2008) (Minnesota's garnishment statute), Minnesota's Multi-Party Accounts Act (MPAA), Minn. Stat. §§ 524.6-201 to 524.6-214 (2008), and the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §§ 1692-1692p (2006).[1] The Savigs contend that the garnishment of their joint accounts by Messerli & Kramer, P.A. (Messerli), on behalf of First National Bank of Omaha (First National) violates the FDCPA and constitutes conversion, wrongful levy, and intrusion upon seclusion. At least five similar suits are pending in this District, including the putative class action *Bowers v. Messerli & Kramer,*

---

[1]     The Court refers to Mona Savig and Robert Savig by their first names when necessary to distinguish between them.

*P.A.*, Civ. No. 09-1036 (JNE/JJK) (D. Minn. filed May 1, 2009).[2]  First National and Messerli

(collectively, Defendants) seek certification of questions of law relating to the burden of proving

net contributions to a joint account during a post-judgment garnishment proceeding to the

Minnesota Supreme Court and a stay pending resolution of those questions.  Defendants

alternatively move for judgment on the pleadings or summary judgment.  For the reasons set

forth below, the Court certifies a reformulation of Defendants' questions to the Minnesota

Supreme Court and stays this action pending resolution of the certified question.

---

[2]     Other similar cases include *Black v. Como Law Firm, P.A.*, Civ. No. 09-795 (D. Minn. filed Apr. 8, 2009); *Billiar v. Atlantic Credit & Financial, Inc.*, Civ. No. 09-133 (D. Minn. filed Jan. 21, 2009); *Phillips v. Messerli & Kramer, P.A.*, Civ. No. 08-4419 (D. Minn. filed July 2, 2008); *Ramirez v. Como Law Firm, PA*, Civ. No. 08-4249 (D. Minn. filed July 1, 2008).  At least three other similar suits have been filed and dismissed.  *E.g.*, *Schmidt v. Como Law Firm, PA*, Civ. No. 09-178 (D. Minn. July 2, 2009); *Frisk v. Capital Alliance Fin., LLC*, Civ. No. 09-678 (D. Minn. May 27, 2009); *Arias v. Stewart Zlimen & Jungers, Ltd.*, Civ. No. 09-558 (D. Minn. Apr. 30, 2009).

     As the parties' focus on the conversion claim in their arguments and the analysis in this Order make clear, the FDCPA claims in these cases are primarily based on alleged violations of Minnesota law.  The Court notes that "[t]he FDCPA was designed to provide basic, overarching rules for debt collection activities; it was not meant to convert every violation of a state debt collection law into a federal violation."  *Carlson v. First Revenue Assurance*, 359 F.3d 1015, 1018 (8th Cir. 2004).  Moreover, the Court is unaware of any cases filed in state court based on similar facts.  In pondering the cause of this rash of federal litigation in this District, the Court notes the availability of attorney fees for successful FDCPA plaintiffs, and the limitation of attorney fees for successful FDCPA defendants to cases brought "in bad faith and for the purpose of harassment."  *See* 15 U.S.C. § 1692k(a)(3).  The Court recognizes that the "basic purpose of statutory attorney fees" is to ensure that "'private citizens . . . have a meaningful opportunity to vindicate the important Congressional policies which these laws contain.'"  *See Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 483 U.S. 711, 735 (1987) (Blackmun, J., dissenting) (quoting S. Rep. No. 94-1011, at 2 (1976), *reprinted in* 1976 U.S.C.C.A.N. 5908, 5910).  Nevertheless, the assertion of FDCPA claims in these cases does not alter the fact that the underlying issues present important questions of Minnesota law that are better resolved by a Minnesota state court.

# I.    BACKGROUND

In 2004, Mona and her then-husband Lowell Bjerke incurred a financial obligation of $8,132.88 on a First National credit card.[3] They failed to pay the debt. On March 24, 2004, default judgment was entered against Mona and Lowell Bjerke and in favor of First National in state court. Mona and Lowell Bjerke divorced on April 21, 2004. Later, Mona and Robert married.

On January 2, 2009, Messerli, acting on behalf of First National, served a post-judgment garnishment summons on Mona and Midwest Bank (Midwest). The Savigs do not contend that Mona did not receive proper notice of the garnishment or that the garnishment summons failed to comply with the requirements set forth in Minn. Stat. § 571.74. Robert was not a party to the garnishment action. Although Robert states in an affidavit that he learned of the judgment against Mona when she received the garnishment summons, he did not intervene in the garnishment action pursuant to Minn. Stat. § 571.83. Midwest served a disclosure stating that the "amounts due and owing the debtor, except earnings," from Midwest were $2,003.78 and remitted the funds to Messerli. Of those funds, $1,438.10 came from Mona and Robert's joint checking account and $565.68 from their joint savings account. The Savigs allege that the last deposit in the joint checking account before the funds were attached was Robert's paycheck in the amount of $842.37. According to the Savigs, the ownership of the funds in the savings account has not yet been determined.

On January 9, 2009, Robert called Messerli regarding the garnishment of the joint accounts. Robert alleges that he informed Messerli that it had illegally seized his funds and that the seizure was unlawful because there was no judgment against him. He requested the return of

---

[3]      The credit card was a First National Bank of South Dakota credit card. Defendant First National is the successor in interest to First National Bank of South Dakota.

his funds. Robert alleges that the Messerli employee he spoke with stated "we don't break the law" and refused to return his funds.[4] This suit followed.

## II.    DISCUSSION

Defendants seek certification of questions of law to the Minnesota Supreme Court, a stay of proceedings pending resolution of the certified questions, judgment on the pleadings, or summary judgment. The Court first considers whether certification to the Minnesota Supreme Court is appropriate.

**A.    Certification to the Minnesota Supreme Court**

The Minnesota Supreme Court "may answer a question of law certified to it by a court of the United States . . . if the answer may be determinative of an issue in pending litigation in the certifying court and there is no controlling appellate decision, constitutional provision, or statute" of Minnesota. Minn. Stat. § 480.065, subd. 3 (2008). Use of a state's certification procedure by a federal district court rests in the court's sound discretion. *Lehman Bros. v. Schein*, 416 U.S. 386, 391 (1974); *Allstate Ins. Co. v. Steele*, 74 F.3d 878, 881-82 (8th Cir. 1996).

The parties dispute whether the MPAA and the Minnesota Supreme Court's decision in *Enright v. Lehmann*, 735 N.W.2d 326 (Minn. 2007), render certification unnecessary. The Court therefore briefly reviews Minnesota law relating to the garnishment of joint accounts prior to enactment of the MPAA, the legislative history of the MPAA, and the *Enright* decision.

In *Park Enterprises v. Trach*, the Minnesota Supreme Court considered whether the entire amount on deposit in a joint account was subject to garnishment to satisfy the debts of one

---

[4]    Defendants dispute Robert's account of his conversation with the Messerli employee. The Court will not make credibility determinations on this motion. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). In addition, the Court notes that paragraphs 15-18 in the Affidavit of Derrick N. Weber relating Messerli's version of the conversation between Robert and the Messerli employee lack personal knowledge and appear to contain hearsay. *See* Fed. R. Evid. 602, 801(c).

account holder where the other account holder was not a debtor.  47 N.W.2d 194, 195-96 (Minn. 1951).  The account agreement for the joint account gave each depositor complete authority over the account and the unconditional power to withdraw all or any part of the account.  *Id.* at 195-97.  The court concluded that the creditor could garnish the entire amount of the account because the debtor was entitled to withdraw any part or all of the account and the creditor was "in effect . . . subrogated to that right."  *Id.* at 196.

In 1973, the Minnesota legislature enacted the MPAA.  Act of May 23, 1973, ch. 619, 1973 Minn. Laws 1472, 1472 (codified at Minn. Stat. § 528.01 (1974)).  One year after enacting the MPAA, Minnesota adopted portions of the Uniform Probate Code (UPC).  *See In re Bush's Estate*, 250 N.W.2d 146, 146 n.2 (Minn. 1976) (citing Act of Apr. 1, 1974, ch. 442, 1974 Minn. Laws 1022, 1022-78; Act of June 5, 1975, ch. 347, 1975 Minn. Laws 1006, 1006-1104)).  According to the relevant section of the MPAA, "[a] joint account belongs, during the lifetime of all parties, to the parties in proportion to the net contributions by each to the sums on deposit, unless there is clear and convincing evidence of a different intent."  Minn. Stat. § 524.6-203(a).  The language of Minn. Stat. § 524.6-203(a) corresponds with Section 6-211(b) of the UPC, entitled "Ownership During Lifetime."[5]  *See id.*; Unif. Probate Code § 6-211(b) (1989) (formerly Unif. Probate Code § 6-103(a)).  In 1994, the legislature renumbered the MPAA to make it part of Minnesota's probate code, but the text of the MPAA did not change.  Act of Apr. 20, 1994,

---

[5]      The Ownership During Lifetime section of the Uniform Probate Code contains language relating to joint accounts held by married parties that is not found in the MPAA.  *Compare* Unif. Probate Code § 2-111(b) ("During the lifetime of all parties, an account belongs to the parties in proportion to the net contribution of each to the sums on deposit, unless there is clear and convincing evidence of a different intent.  As between parties married to each other, in the absence of proof otherwise, the net contribution of each is presumed to be an equal amount."), *with* Minn. Stat. § 524.6-203(a) ("A joint account belongs, during the lifetime of all parties, to the parties in proportion to the net contributions by each to the sums on deposit, unless there is clear and convincing evidence of a different intent.").

ch. 472, § 63, 1994 Minn. Laws 375, 415. The legislature's decision to move the MPAA to the probate code "indicates the legislature's desire that Minnesota courts interpret the MPAA consistently with those of other states." *Enright*, 735 N.W.2d at 332.

In *Enright*, the Minnesota Supreme Court considered whether a judgment creditor could garnish funds held in joint accounts that were not contributed by the debtor. 735 N.W.2d at 328. The district court and Minnesota Court of Appeals held that, under *Park Enterprises*, all funds in a joint account could be garnished regardless of the identity of the contributor. *Id.* The Minnesota Supreme Court found that the rule in *Park Enterprises* was inconsistent with the MPAA. *Id.* at 331-34. Under the unambiguous language of the MPAA, "where one party has contributed all the money in a joint account, a creditor cannot garnish the account to satisfy a debt belonging to a non-contributing party unless the creditor provides clear and convincing evidence that the depositor intended to confer ownership of the funds on the debtor." *Id.* at 331. In so holding, the Minnesota Supreme Court found the decisions of other jurisdictions "instructive." *See id.* at 332-33 & n.5.

In this case, Defendants concede that under *Enright*, they are not entitled to Robert's net contributions to the Savigs' joint accounts. Instead, Defendants contend that they could lawfully serve a post-judgment garnishment summons on the joint accounts and that the Savigs bore the burden of establishing Robert's net contributions to the accounts during the garnishment proceeding. Defendants therefore seek to certify questions relating to the burden of proving net contributions when a creditor's post-judgment garnishment summons reaches a joint account.[6]

---

[6]     Defendants seek to certify the following five questions to the Minnesota Supreme Court.

      1.     Under Minnesota Statutes section 524.6-203(a), when a creditor's levy, garnishment, or other method of attachment reaches a multiparty account,

The Savigs oppose certification on the grounds that the proposed questions are not determinative

of any issues in this case, and that, to the extent the proposed questions are determinative, the

*Enright* decision and the MPAA provide sufficient guidance to this Court.

Initially, the Court addresses the Savigs' reliance on *Phillips v. Messerli & Kramer, P.A.*,

Civ. No. 08-4419, 2009 WL 1046685 (D. Minn. Apr. 20, 2009), in support of their contention

that a creditor may not serve a garnishment summons on a joint account where not all of the

account holders are debtors.  A district court judge is not required to follow the decision of

another district court judge.  *See Threadgill v. Armstrong World Indus., Inc.*, 928 F.2d 1366,

1371 (3d Cir. 1991); *Muller v. Allen*, 514 F. Supp. 998, 1001 (D. Minn. 1981).  The Court

---

which party or parties bear the burden of proving that the account is jointly held?

2.  When a creditor's levy, garnishment, or other method of attachment reaches a multiparty account, which party or parties bear the burden of proving the relative contributions to the account?

3.  If the depositors bear that burden and fail to meet it in state court, may they commence a separate action in federal court addressing the same issues?

4.  When a person who is not a debtor alleges an interest in the funds in the account, and fails to prove his or her interest in state court, may he or she commence a separate action in federal court addressing the same issues?

5.  If that burden must be met in the state court action, and the parties fail to meet their burden in the state court, does attachment of the funds constitute a tortious act by the creditor or the creditor's attorney?

Questions 3 and 4 ask the Minnesota Supreme Court to decide issues of federal jurisdiction.  The Court declines to certify questions 3 and 4 to the Minnesota Supreme Court because "the certified question process provides no opportunity for a state court to render an opinion on matters of federal law."  *In re UnitedHealth Group Inc. Shareholder Derivative Litig.*, 754 N.W.2d 544, 552 (Minn. 2008).

therefore conducts its own independent analysis of Minnesota law. *See Threadgill*, 928 F.2d at 1371.

The Court first considers whether the assignment of the burden of proof during a post-judgment garnishment proceeding "may be determinative of an issue" in this matter. *See* Minn. Stat. § 480.065, subd. 3. The Savigs assert claims for conversion, wrongful levy, and intrusion upon seclusion, and base their FDCPA claim in part on those state-law claims. Conversion is an act of willful interference with personal property that deprives another of its use and possession without lawful justification. *DLH, Inc. v. Russ*, 566 N.W.2d 60, 71 (Minn. 1997). The Savigs contend that Defendants were not entitled to garnish the joint accounts "in the first place" and that merely "freezing" funds in a joint account to permit the determination of their ownership constitutes interference with, and hence conversion of, the funds.[7] If Defendants' garnishment of the joint accounts was not unlawful, however, it cannot constitute conversion. *See id.* Whether Defendants or the Savigs had the burden of showing net contributions is determinative of whether Defendants' garnishment of the joint accounts was unlawful.[8]

The Savigs also contend that the burden of proof during a garnishment proceeding is irrelevant in this case because they indisputably have the burden of showing Robert's ownership of the funds to succeed on their conversion claim.[9] This argument ignores the requirement of an act "without lawful justification" to succeed on a claim for conversion. *See id.* Consequently,

---

[7] The Court construes "freezing" as a reference to the garnishee's obligation, upon service of the garnishment summons, to "retain possession and control of the disposable earnings, indebtedness, money, and property of the debtor." *See* Minn. Stat. § 571.73, subd. 1.

[8] The Court recognizes that Defendants' alleged retention of Robert's funds may constitute conversion.

[9] The parties focus on the conversion claim in their arguments; the Court therefore does the same.

the Savigs must show that the service of the garnishment summons and the remittal of the funds in the joint accounts were "without lawful justification" in addition to showing Robert's ownership of funds to prove Defendants converted Robert's funds. The Court concludes that the issue of whether the account holders or the judgment creditor must prove net contributions to a joint account during a post-judgment garnishment proceeding may be determinative of issues in this case.

The Court next considers whether there is a "controlling appellate decision, constitutional provision, or statute" of Minnesota on the issue of which party bears the burden of proving net contributions to a joint account during a post-judgment garnishment proceeding.[10] *See* Minn. Stat. § 480.065, subd. 3. The Savigs contend that *Enright* provides sufficient guidance to the Court because "[t]he Minnesota Supreme Court unequivocally allocated the burden to the creditor at three separate points in *Enright*." For the following reasons, the Court disagrees.

The MPAA itself does not contain any language relating to the burden of proving net contributions, and *Enright* did not address the issue of who bears the burden of establishing net contributions to a joint account during a post-garnishment proceeding. Rather, the question before the *Enright* court was whether the lower courts correctly relied on *Park Enterprises* when holding that all funds in a joint account, regardless of the identity of the contributor, could be

---

[10]    Defendants cite *Bar-Meir v. North American Die Casting Assoc.*, No. C6-03-331, 2003 WL 22015444 (Minn. Ct. App. Aug. 26, 2003) in support of their contention that joint account holders bear the burden of proving net contributions. In *Bar-Meir*, the debtor argued that funds in a joint account were "exempt" because they were deposited by his wife, a non-debtor. *Id.* at *1. The *Bar-Meir* court rejected this argument because the debtor "fail[ed] to meet his burden of proving that his wife deposited the funds: there is no evidence of who contributed to the account." Unpublished opinions of the Minnesota Court of Appeals are non-precedential, *Vlahos v. R&I Construction of Bloomington, Inc.*, 676 N.W.2d 672, 676 n.3 (Minn. 2004), and "[t]he decision of an intermediate state appellate court is not binding on a federal court that seeks to determine state law," *see Pleasants v. American Express Co.*, 541 F.3d 853, 858 (8th Cir. 2008). *Bar-Meir* is also unpersuasive because it predates *Enright* and addresses whether the wife's funds were "exempt," not whether the funds were subject to garnishment in the first place.

garnished to satisfy the debt of any account holder. *Id.* at 328 ("The district court and court of appeals, relying on *Park Enterprises* . . . held that all funds in a joint account, regardless of the identity of the contributor, may be garnished to satisfy the debt of any account holder. We reverse and hold that the plain language of the [MPAA], Minn. Stat. § 524.6-203(a) (2006), prevents a creditor from garnishing funds in a joint account not contributed by the debtor unless the creditor proves by clear and convincing evidence that the depositing party intended to confer ownership of the funds on the debtor."). Nothing in this holding addresses who has the burden to prove which funds, if any, were contributed by the debtor. Moreover, it was unnecessary for the *Enright* court to address who had the burden of proving net contributions because it was undisputed that the non-debtor had contributed **all** of the funds in the account. *See* 735 N.W.2d at 329 ("Lehmann asserts, and Enright agrees, that [a non-debtor] deposited all the money in the joint accounts."). While *Enright* establishes the burden of proof once net contributions are known, it does not speak to the burden of proving net contributions.[11] In short, who made the contributions is a separate and distinct question from whether a known contributor intended to confer ownership of certain funds.

The Savigs contend that *Enright* not only speaks to the burden of proving net contributions, but that it stands for the proposition that a creditor cannot garnish or "freeze" funds held in a joint account. They describe the practical implications of their interpretation of *Enright* for creditors—the inability to prevent dissipation of the funds in the joint account before there is an opportunity to prove net contributions—as a "legislative problem." If controlling

---

[11]     The Court is aware that another court in this District recently found that *Enright* holds that the burden of proving net contributions is on the debt collector. *See Ramirez v. Como Law Firm, P.A.*, Civ. No. 08-4249, slip op. at 7 & n.3 (D. Minn. June 30, 2009). As discussed herein, however, the Court respectfully disagrees that the *Enright* court addressed the burden of proving net contributions.

Minnesota authority existed, it would be a "legislative problem"—one that would call for a different interpretation of the Ownership During Lifetime section of the UPC than any interpretation adopted by any other state—but there is no such controlling authority. As explained above, *Enright* does not establish that a debtor may put her assets out of reach of a creditor by co-mingling them with the assets of a non-debtor, including by depositing them in a joint account. *Cf. id.* at 332 (stating that the MPAA "provides **some measure** of protection for assets in a joint bank account from creditors of either party" (emphasis added)).

The Court notes that other jurisdictions, when confronted with the question of who bears the burden of proving net contributions to a joint account under their versions of the Ownership During Lifetime section of the UPC, have held that the burden of proof is on the account holders. As explained by the Minnesota Supreme Court in *Enright*, although the MPAA was not originally enacted as part of the probate code, the Minnesota legislature indicated its desire that the MPAA be interpreted in a manner consistent with other states when it moved the MPAA to the probate code. *Id.* "One of the purposes of the [UPC] is to 'make uniform the law among the various jurisdictions.'" *Id.* (quoting Minn. Stat. § 524.102(b)(4) (2006)). In addition, Minn. Stat. § 645.22 (2008) directs courts to interpret and construe "laws uniform with those of other states" in a manner that effects their general purpose "to make uniform the laws of those states which enact them." As the Minnesota Supreme Court considered other states' interpretations of the Ownership During Lifetime section of the UPC in *Enright*, *see* 735 N.W.2d at 332-33 & n.5, this Court considers other states' allocations of the burden of proof under that section, *cf. Johnson v. Murray*, 648 N.W.2d 664, 670 (Minn. 2002) ("[W]e give great weight to other states' interpretations of a uniform law.").

In *Brown v. Commonwealth*, the Kentucky Court of Appeals was faced with the question of whether a judgment creditor could garnish accounts jointly held by a judgment debtor and his wife. 40 S.W.3d 873, 875 (Ky. Ct. App. 1999). The language of Kentucky's Multiple Party Accounts Statute is identical to Minn. Stat. § 524.6-203(a). *See* Ky. Rev. Stat. Ann. § 391.310(1) (West 2008). After holding that the judgment creditor could not reach funds contributed by a non-debtor joint account tenant, the Kentucky Court of Appeals held that "a party to a joint account may, for attachment and execution purposes, initially be presumed to own the entire joint account." *Brown*, 40 S.W.3d at 882. The court explained that on "notice and objection, however, **the debtor or any third-party account tenant may rebut that presumption by proof of separate net contributions to the account** and an intention that the non-contributor's use of the other's contributions be limited." *Id.* (emphasis added).

Similarly, in *Giove v. Stanko*, the issue before the court was "the extent to which bank accounts, which are held jointly by several persons, are subject to being garnished by a judgment creditor where the pertinent judgment debtor is only one of the several named parties to the joint bank accounts." Civ. No. 86-L-582, 1988 WL 80872, at *2 (D. Neb. July 20, 1988), *aff'd* 882 F.2d 1316 (8th Cir. 1989). The language of the relevant statute in Nebraska was identical to the language of Minn. Stat. § 524.6-203(a). *See* Neb. Rev. Stat. § 30-2703 (Reissue 1985) (repealed 1993). The non-debtor account holder intervened in the garnishment action and argued that the funds held in the certificates of deposit belonged to her children, who had also intervened. *Giove*, 1988 WL 80872 at *1. The court first noted that prior to enactment of Neb. Rev. Stat. § 30-2703, under Nebraska law the intervenor bore the burden of proof in a garnishment proceeding. *Id.* at *6. The comment to Neb. Rev. Stat. § 30-2703 stated "[t]he final code contains no provision dealing with division of the account when the parties fail to prove net

contributions" and explained that "[t]he omission is deliberate." *Id.* (quoting Neb. Rev. Stat. § 30-2703 cmt.). Based on this comment, the burden of proof for an intervenor remained unchanged—the intervenor was required "to demonstrate the extent of the net contributions which are not attributable to the defendant judgment debtors." *Id.*

Finally, the Court of Appeals of Indiana decided whether a judgment creditor had a right to garnish the interest of a joint account owner who is not a judgment debtor in *Browning & Herdrich Oil Co. v. Decatur County Bank*, 489 N.E.2d 988, 989 (Ind. Ct. App. 1986). As in *Enright,* it was undisputed in *Browning* that a non-debtor had contributed 100% of the funds in the account. *See Browning*, 489 N.E.2d at 989. The Court held that under Ind. Code § 32-4-1.5-3(a) (1982) (repealed 2002), which contains the same language as Minn. Stat. § 524.6-203(a), the non-debtor's funds were not subject to garnishment in the absence of clear and convincing intent to make a gift of them to the judgment debtor. *Id.* at 992. In a concurring opinion, Judge Ratliff highlighted the fact that the majority opinion did not answer whether the joint account holders or a judgment creditor had the burden of proving the debtor's interest in the account. *Id.* (Ratliff, J., concurring). Judge Ratliff noted that most courts place the burden on the depositors since "placing the burden of proof on the depositors 'is the fair and reasonable rule because the depositors are in a much better position than the judgment creditor to know the pertinent facts.'" *Id.* at 992-93 (Ratliff, J., concurring) (quoting *Hayden v. Gardner*, 391 S.W.2d 752, 754 (Ark. 1964)).

In short, the interpretation of the MPAA urged by the Savigs conflicts with the interpretations adopted by every state that has enacted the Ownership During Lifetime section of

the UPC and considered the burden of proof issue.[12]  The Savigs' interpretation would have serious practical implications for post-judgment creditors seeking repayment of debts from joint accounts.  While joint accounts are often referred to as a "poor man's will," *see* Note, *The "Poor Man's Will" Gains Respectability: Using the Minnesota Multi-Party Accounts Act*, 1 Wm. Mitchell L. Rev. 48, 48 (1974), nothing in Minnesota law requires the conclusion that a joint account is a debtor's (rich or poor) equivalent to a Swiss bank account.  Instead, a joint account merely "provides a 'simple, inexpensive method of passing funds in the account from a deceased joint owner to the surviving joint owner, avoiding the necessity of probate proceedings.'"  *See Enright*, 735 N.W.2d at 332 (quoting *Deutsch, Larrimore & Farnish, P.C. v. Johnson*, 848 A.2d 137, 142-43 (2004)).  Finally, the Court observes that placing the burden of proving net contributions to a joint account on "the party with easier access to relevant information" is consistent with "[b]asic principles underlying the allocation of burdens of proof" in Minnesota law.  *See In re UnitedHealth Group Inc. Shareholder Derivative Litig.*, 754 N.W.2d 544, 561 (Minn. 2008).  The Court therefore finds the reasoning in *Brown*, *Giove*, and the concurring opinion in *Browning* consonant with Minnesota law, as well as sensible and persuasive.

---

[12]      Defendants contend that *Ingram v. Hocking Valley Bank*, 708 N.E.2d 232 (Ohio Ct. App. 1997), also holds that the burden of proving net contributions rests with the account holders.  The bulk of the court's opinion in *Ingram* addresses whether a bank may be liable for its failure to determine the debtor's share of a joint account when served with a garnishment summons.  708 N.E.2d at 236-40.  The *Ingram* court held that the bank was not liable under a contract theory of garnishment that was rejected in *Enright*.  *Compare id.* (finding bank not liable because garnishment summons required it to remit all funds under debtor's control and debtor could withdraw all of the funds in account), *with Enright*, 735 N.W.2d at 335 (rejecting argument that all funds in a joint account are attachable by garnishment to satisfy a debt where the debtor had the power to withdraw all of the funds).  The *Ingram* court then briefly concluded the creditor was not liable because it "engage[d] in usual and customary debt collection procedure authorized by statute."  *Ingram*, 708 N.E.2d at 242.  Because *Ingram*'s holding with respect to the creditor relies in part on a theory rejected in *Enright*, the Court does not find it persuasive.

Regardless of the persuasiveness of those decisions, however, the question of whether the burden of establishing net contributions in a post-judgment garnishment proceeding falls on a judgment creditor or on joint account holders presents an important question of Minnesota law for which there is no controlling appellate decision, constitutional provision, or statute of Minnesota. In addition, a Minnesota state court is better suited to determine what applicable presumptions regarding ownership of the funds, if any, apply in the absence of such proof. Some jurisdictions have adopted a presumption that "the debtor is presumed, absent proof to the contrary, to own his or her proportionate share of the entire account," while others have decided that "as a general rule, the debtor is presumed to own the entire account, subject to the right of the account holders to rebut that presumption." *See generally* Martha A. Churchill, Annotation, *Joint Bank Account as Subject to Attachment, Garnishment, or Execution by Creditor of One Joint Depositor*, 86 A.L.R.5th 527 (2009). Whether a judgment debtor is presumed to own the entire account or a proportionate share of the account may be determinative of an issue in this litigation. If Mona were presumed to own all of the funds in the absence of proof of net contributions, Robert's claim for conversion would fail in the absence of such proof because the garnishment of all of the funds in the joint accounts was lawful.[13] If Mona were presumed to own a proportionate share of the funds in the joint accounts, Robert may have a claim for conversion of the remaining funds even in the absence of such proof. No controlling, or even persuasive, Minnesota authority exists as to the applicable presumption, and it is not for a federal court to decide which presumption Minnesota should adopt.

---

[13] Robert did not intervene in the garnishment proceeding. The Court notes that Robert's affidavit indicates that he informed Messerli that it had "seized [his] funds," but does not indicate that Robert informed Messerli of the amount of his net contributions.

Further, at least five cases based on similar fact patterns, including a putative class action, are currently pending in this District. Two of the cases adopt the Savigs' interpretation of the MPAA and put the burden of proving net contributions on the creditor. In light of the current economic downturn, it is not unreasonable to anticipate additional litigation asserting state-law and FDCPA claims based on the garnishment of a joint account. These facts weigh in favor of certification. *See Hatfield*, 701 F.2d at 1269 ("Certification 'in the long run saves time, energy, and resources and helps build a cooperative judicial federalism.'") (quoting *Lehman Bros*, 416 U.S. at 391); *Perkins v. Clark Equip. Co.*, 823 F.2d 207, 210 (8th Cir. 1987) ("One of the factors we look at when determining whether to certify an issue is whether it is likely to recur.").

Finally, the Court considers the Savigs' contention that permitting a judgment creditor to garnish a joint account where not all of the account holders are judgment debtors violates due process.[14] "The principle of avoiding a federal constitutional question by 'secur[ing] an authoritative state court's determination of an unresolved question of its local law' is well established." *Hatfield v. Bishop Clarkson Mem'l Hosp.*, 701 F.2d 1266, 1268 (8th Cir. 1983) (quoting *Clay v. Sun Ins. Office*, 363 U.S. 207, 212 (1960)). The Savigs' due process argument therefore weighs in favor of certification, because if they correctly assert that under *Enright* a

---

[14]     The Savigs did not submit any meaningful argument relating to the alleged due process violation other than a general citation to *Sniadach v. Family Financial Corp. of Bay View*, 395 U.S. 337 (1969) (invalidating Wisconsin pre-judgment garnishment statute where wages were frozen without opportunity for debtor to be heard). The Savigs also failed to notify the Office of the Minnesota Attorney General of their argument questioning the constitutionality of the garnishment statute if it permits garnishment of joint accounts. *See* Fed. R. Civ. P. 5.1(a)(1) (requiring a party that files a paper "drawing into question the constitutionality" of a state statute to file a notice of constitutional question and serve the notice and paper on the state attorney general). The Court declines to consider the Savigs' due process arguments until the Minnesota Supreme Court has resolved the certified question and the Savigs notify the appropriate persons of, and properly brief, any such argument.

judgment creditor may not garnish or even "freeze" a joint account, the Court need not determine whether permitting such a garnishment violates due process.

In conclusion, while the Court is of the opinion that the burden of proving net contributions to a joint account falls to the account holders, the Minnesota Supreme Court should have the opportunity to address, if it chooses to do so, the burden of proof issue and what, if any, applicable presumptions regarding ownership apply in the absence of such proof. The Court therefore exercises its discretion to certify the following question to the Minnesota Supreme Court:

> May a judgment creditor serve a garnishment summons on a joint account to satisfy the debt of an account holder when not all of the account holders are judgment debtors, and if so, (1) is it the judgment creditor or the account holders who bear the burden of establishing net contributions to the account during the garnishment proceeding and (2) what applicable presumptions regarding ownership, if any, apply in the absence of proof of net contributions?

The Court acknowledges that the Minnesota Supreme Court may reformulate this question.

The Court takes this opportunity to address the introduction to the Savigs' responsive memorandum, which began with the following, from the Merchant of Venice:

| PORTIA: | A pound of that same merchant's flesh is thine;<br>The court awards it, and the law doth give it. |
|---|---|
| SHYLOCK: | Most rightful judge! |
| PORTIA: | And you must cut this flesh from off his breast;<br>The law allows it, and the court awards it. |
| SHYLOCK: | Most learned judge!—A sentence! come, prepare! |
| PORTIA: | Tarry a little;—there is something else.—<br>This bond doth give thee here no jot of blood;<br>The words expressly are, "a pound of flesh."<br>Take then thy bond, take thou thy pound of flesh;<br>But, in the cutting it, if thou dost shed<br>One drop of Christian blood, thy lands and goods<br>Are, by the laws of Venice, confiscate |

|  | Unto the state of Venice. |
|---|---|
| GRATIANO: | O upright judge!—Mark, Jew;—O learned judge! |
| SHYLOCK: | Is that the law? |
| PORTIA: | Thyself shalt see the act:<br>For, as thou urgest justice, be assur'd<br>Thou shalt have justice, more than thou desirest. |

William Shakespeare, *The Merchant of Venice*, Act IV, Sc. 1.

Counsel for the Savigs may not be aware that *The Merchant of Venice* is a play known for its anti-Semitic tone. *See, e.g.*, *Bloch v. Frischholz*, 533 F.3d 562, 568-69 (7th Cir. 2008) (Wood, J., dissenting) (describing as "shocking" the defendants' assertion that the plaintiffs sought their "pound of flesh" in suit alleging religious discrimination against Jews because *The Merchant of Venice* is a play involving "a bitter Jewish moneylender, Shylock," who is "is punished by losing half of his lands and being forced to convert to Christianity"); Judy M. Cornett, *The Legacy of Byrd v. Hall: Gossiping About Summary Judgment in Tennessee*, 69 Tenn. L. Rev. 175, 202 n.163 (2001) ("It is impossible to think about [*The Merchant of Venice*] without also thinking about its reception history as an arguably anti-Semitic work."); Michael Jay Willson, *A View of Justice in Shakespeare's* The Merchant of Venice *and* Measure for Measure, 70 Notre Dame L. Rev. 695, 707 (1995) ("No one can ignore the anti-Semitic nature of [*The Merchant of Venice*'s] Christian characters."). The Court takes this opportunity to advise the Savigs that such an introduction, complete with references to "Jew," "Christian blood," and "pound[s] of flesh," may well distract from the substance of their argument, and suggests that they would be better served by exclusion of such inflammatory references in their briefing before the Minnesota Supreme Court.

**B.      Stay Pending Resolution of Certified Question**

Defendants seek a stay of this case pending resolution of the certified question.  The Court concludes that such a stay is in the best interest of judicial administration.  Accordingly, this case is stayed pending resolution of the certified question by the Minnesota Supreme Court, whether by accepting and answering the certified question, or declining to do so.

**C.      Judgment on the Pleadings/Summary Judgment**

Defendants also seek judgment on the pleadings or summary judgment on Plaintiffs' claims.  Defendants' supporting arguments are predicated on the assumption that the joint account holders bear the burden of proving net contributions to the account in a post-judgment garnishment proceeding.  Because the Court has certified a question relating to the burden of proof to the Minnesota Supreme Court, the Court denies Defendants' motion insofar as it seeks judgment on the pleadings or summary judgment.  Defendants may bring a new motion for judgment on the pleadings or summary judgment after resolution of the certified question.

**D.      Mona's Standing to Assert Common-Law Claims**

At the hearing on their motion, Defendants questioned whether Mona has standing to assert claims for conversion and wrongful levy because she is a judgment debtor.  Mona's standing to assert claims for conversion and wrongful levy depends on the terms of the joint account agreements.  *See Enright*, 735 N.W.2d at 329-30 (holding that debtor had standing to challenge a garnishment action even though the funds at issue belonged to the debtor's wife because the terms of the joint account contract provided that the debtor had the power to withdraw and use the funds in the account regardless of the original source of the deposit).  Given the lack of briefing or evidence on this issue, the Court declines to decide at this time whether Mona has standing to assert the common-law claims.

## III. CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT

IS ORDERED THAT:

1.      Defendants' motion for judgment on the pleadings, summary judgment, to certify questions of law to the Minnesota Supreme Court, or a stay of proceedings pending resolution of the certified questions [Docket No. 5] is GRANTED IN PART and DENIED IN PART.

2.      The following question is certified to the Minnesota Supreme Court:

        May a judgment creditor serve a garnishment summons on a joint account to satisfy the debt of an account holder when not all of the account holders are judgment debtors, and if so, (1) is it the judgment creditor or the account holders who bear the burden of establishing net contributions to the account during the garnishment proceeding and (2) what applicable presumptions regarding ownership, if any, apply in the absence of proof of net contributions?

        The Court acknowledges that the Minnesota Supreme Court may reformulate this question.

3.      The names and addresses of the parties' counsel appear in Appendix A.

4.      The Clerk of Court shall forward a copy of this Order to the Minnesota Supreme Court.

5.      This case is STAYED pending resolution of the certified question.

Dated:  July 6, 2009

                                        s/  Joan N. Ericksen
                                        JOAN N. ERICKSEN
                                        United States District Judge

APPENDIX A

The name and address of counsel for Plaintiffs are:

Nicholas P. Slade
Barry & Slade, LLC
2021 East Hennepin Avenue, Suite 195
Minneapolis, MN  55413

The names and addresses of counsel for Defendants are:

Derrick N. Weber
Truman W. Schabilion
Messerli & Kramer, P.A.
3033 Campus Drive, Suite 250
Plymouth, MN  55441