UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Civil File No. 09-CV-00132 (JNE/RLE)

Mona Savig,
Robert Savig,

Plaintiffs,

v.

First National Bank of Omaha, a
foreign corporation,
Messerli & Kramer, P.A.,

Defendants.

MEMORANDUM IN SUPPORT
OF DEFENDANTS' RENEWED
MOTION FOR SUMMARY
JUDGMENT

## INTRODUCTION

On April 22, 2010, the Minnesota Supreme Court answered three questions certified to it by the United States District Court for the District of Minnesota for the exact issues in this matter. The Minnesota Supreme Court's answers fully resolve the summary judgment issues presented to this Court. *Savig v. First Nat'l Bank of Omaha*, No. A09-1221 (Minn. Apr. 22, 2010). The Minnesota Supreme Court rejected all of Plaintiffs' arguments opposing Defendants' summary judgment motion. Accordingly, no creditable arguments exist to defeat Defendants' renewed summary judgment motion. Together with these moving papers, Defendants rely on memoranda and documents previously submitted for Defendants' motion for judgment on the pleadings and summary judgment.

# STATEMENT OF FACTS

## I. Description of the Parties.

Plaintiff Mona Savig (Mona Savig) is an individual who applied for consumer credit card account with a promotional offer through First National Bank, South Dakota (FNBSD). Plaintiff Robert Savig (Robert Savig) is Mona Savig's husband.[1]

Defendant First National Bank of Omaha (FNBO) is the issuer and owner of Mona Savig's account. Defendant Messerli & Kramer, P.A. (Messerli)[2], is a law firm that represented FNBO in a suit in state court to recover amounts owed by Mona Savig.

## II. Factual Narrative.

Mona Savig applied for and opened a credit account with a promotional offer from FNBSD.[3] (Pls.' Compl. ¶ 8; Defs.' Ans. ¶ 9.) She failed to make payments as required by the contract governing the account. (Pls.' Compl. ¶¶ 8, 9; Defs.' Ans. ¶ 9.) Mona Savig failed to pay the debt, and FNBO commenced a state court action for breach of the account contract on or about January 29, 2004. (Weber Aff. ¶ 5.) Judgment was entered against Mona Savig on or about March 24, 2004. (Pls.' Compl. ¶ 9.)

Pursuant to the judgment entered against Mona Savig, Messerli, as attorney for FNBO, served a garnishment summons on Midwest Bank seeking disclosure of "non-

---

[1] Robert and Mona Savig will occasionally be referred to as "Plaintiffs" throughout this Memorandum.
[2] FNBO and Messerli will occasionally be referred to as "Defendants" throughout this Memorandum.
[3] When the credit card account was opened, Mona Savig was married to Lowell Bjerke and was known as Mona Bjerke. For convenience, she will be referred to as Mona Savig herein. The credit card account was in the names of both Lowell and Mona, and judgment was entered against each of them. However, Lowell's liability is immaterial to this action.

2

exempt indebtedness, money, or other property due or belonging to the debtor," Mona Savig. (Pls.' Compl. ¶ 10; Weber Aff. ¶ 6, Ex. A.)

Midwest Bank confirmed that it possessed money due and owing to Mona Savig. (Weber Aff. ¶ 7, Ex. B.) Subsequently, Midwest Bank withheld $2,003.78 from the account and remitted it to FNBO through a trust account established with Messerli in partial payment of FNBO's judgment against Mona Savig. (Pls.' Compl. ¶ 10; Defs.' Ans. ¶ 10.)

Messerli provided the statutory "Exemption Claim Form," in order for Mona Savig to claim any assets exempt from attachment. (Weber Aff. ¶ 8, Ex. A at 3-6.) She did not claim any exemptions, did not request a hearing, and Robert Savig did not intervene to claim any interest in the funds pursuant to Minnesota Statutes section 571.83 (2008). (*See* Pls.' Compl.; Defs.' Ans. ¶¶ 12-17; Weber Aff. ¶¶ 9-11.)

Robert Savig called Messerli and stated that all of the funds were his. (Weber Aff. ¶¶ 12, 13.) Messerli's employees asked Robert Savig to show the source of the funds so it could return the portion of the funds in the account that were his. (Weber Aff. ¶ 14.) Robert Savig refused to provide further information and hung up on the employee. (Weber Aff. ¶ 15.) Approximately three months after his call to Messerli, Robert Savig provided sufficient information to support his claim that $842.37 of the funds were contributed by him. (Weber Aff. 16.) Consequently, Messerli sent Robert Savig, through his attorney, a check for $842.37. (Weber Aff. 17.)

Plaintiffs alleged that the funds were attached from a bank account held jointly by them. (Pls.' Compl. ¶ 11.) Specifically, Plaintiffs alleged that only $595.73 of the

3

garnished funds belonged to Mona Savig, $842.37 belonged to Robert Savig, and ownership of the remaining $565.68 could not be determined, which contradicted Robert Savig's previous statements to Messerli. (Pls.' Compl. ¶¶ 11, 18.) Plaintiffs asserted that the attachment of funds violated various provisions of the FDCPA, and amounted to the torts of conversion, wrongful levy, and invasion of privacy by intrusion upon seclusion. (Pls.' Compl. ¶¶ 28-50.)

On July 7, 2009, Plaintiffs' case was certified to the Minnesota Supreme Court. (Order.) On April 22, 2010, the Minnesota Supreme Court ruled:

> 1. A judgment creditor may serve a garnishment summons on a garnishee, attaching funds in a joint bank account to satisfy the debt of an account holder even though not all of the account holders are judgment debtors.
> 2. Account holders bear the burden of establishing net contributions to a joint account during a garnishment proceeding.
> 3. A judgment debtor is initially, but rebuttably, presumed to own all of the funds in a joint account, and if the presumption is not rebutted, all of the funds in a joint account are subject to garnishment.

*Savig*, No. A09-1221, at *2. (Weber Aff. Ex. C.) Therefore, Defendants did not violate the FDCPA or Minnesota law, and judgment should be granted in favor of Defendants.

## ARGUMENT

### I. Legal Standard for Summary Judgment.

Summary judgment is appropriate when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When considering a motion for summary judgment, any inferences to be drawn from the facts must be viewed in the light most favorable to the

4

550198.1

garnished funds belonged to Mona Savig, $842.37 belonged to Robert Savig, and ownership of the remaining $565.68 could not be determined, which contradicted Robert Savig's previous statements to Messerli. (Pls.' Compl. ¶¶ 11, 18.) Plaintiffs asserted that the attachment of funds violated various provisions of the FDCPA, and amounted to the torts of conversion, wrongful levy, and invasion of privacy by intrusion upon seclusion. (Pls.' Compl. ¶¶ 28-50.)

On July 7, 2009, Plaintiffs' case was certified to the Minnesota Supreme Court. (Order.) On April 22, 2010, the Minnesota Supreme Court ruled:

> 1. A judgment creditor may serve a garnishment summons on a garnishee, attaching funds in a joint bank account to satisfy the debt of an account holder even though not all of the account holders are judgment debtors.
> 2. Account holders bear the burden of establishing net contributions to a joint account during a garnishment proceeding.
> 3. A judgment debtor is initially, but rebuttably, presumed to own all of the funds in a joint account, and if the presumption is not rebutted, all of the funds in a joint account are subject to garnishment.

*Savig*, No. A09-1221, at *2. (Weber Aff. Ex. C.) Therefore, Defendants did not violate the FDCPA or Minnesota law, and judgment should be granted in favor of Defendants.

## ARGUMENT

### I. Legal Standard for Summary Judgment.

Summary judgment is appropriate when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When considering a motion for summary judgment, any inferences to be drawn from the facts must be viewed in the light most favorable to the

nonmoving party. *Id.* The moving party holds the initial burden of demonstrating the absence of a disputed issue of material fact. *Id.* at 323.

Once the moving party has carried its burden, the non-moving party must do more than simply show there is some metaphysical doubt as to the material facts. *Matsushita v. Zenith*, 475 U.S. 574, 586 (1986). The non-moving party must produce more than a mere scintilla of evidence to successfully oppose summary judgment. *Id.* A fact is material for purposes of summary judgment only if it might affect outcome of case under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"[A] complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. In such situations, there can be no genuine issue of material fact. *Id.* Thus, on issues that the nonmoving party will have the burden of proof, it is his or her responsibility to confront the motion for summary judgment with an affidavit or other similar evidence. *Liberty*, 477 U.S. at 256.

## II. Summary Judgment is Appropriate because Plaintiffs' Claims are Premised on Unsuccessful Legal Arguments.

The sole issue in this case is whether, under the Minnesota Multiparty Accounts Act, a judgment creditor and its attorneys bear the burden of determining whether funds in a bank account are jointly held before service of a garnishment summons on that bank. Because the Minnesota Supreme Court ruled that the burden falls on the depositors in *Savig*, Defendants are entitled to summary judgment.

550198.1

### A. Plaintiffs Cannot Establish a Claim for Conversion.

Plaintiffs' conversion claim is based upon the alleged wrongful levy, which the Minnesota Supreme Court ruled was lawful. *Savig*, No. A09-1221, at *12. Thus, Plaintiffs cannot establish any of the elements for conversion, which are: willful interference with the property of another; no lawful justification; and deprivation of the lawful possessor of use and possession of the property. *DLH, Inc. v. Russ*, 566 N.W.2d 60, 71 (Minn. 1997).

Plaintiffs cannot establish the first element because Defendants, as a matter of law, did not willfully interfere with Robert Savig's funds. Defendants complied with established legal procedures when serving a garnishment summons on an account Mona Savig held jointly with Robert Savig. Defendants even took precaution and instructed Midwest Bank to attach "non-exempt indebtedness, money, or other property due or belonging to the debtor."

Similarly, Plaintiffs cannot establish the second element because Defendants had a lawful justification for serving a garnishment summons on an account jointly held by Mona Savig, a judgment debtor, and Robert Savig. It is a legal action authorized by Minnesota Statutes and now confirmed lawful by case law.

Finally, Plaintiffs cannot establish the third element because as soon as Robert Savig properly supported his claim as to the amount of levied funds that were his, Messerli remitted those funds to him. Therefore, Plaintiffs' conversion claim fails as a matter of law.

B.  **Plaintiffs Cannot Establish a Claim for Wrongful Levy.**

The Minnesota Supreme Court refused to recognize a cause of action for wrongful garnishment because it held that sufficient procedures and remedies are provided by Minnesota garnishment statutes. *Savig*, No. A09-1221, at *26-27 n.16. Regardless, the garnishment statutes require that a creditor who acts in bad faith when issuing a garnishment be liable for $100.00, actual damages, costs, and attorneys' fees. As recently determined in *Savig*, however, Defendants did not act in bad faith when issuing a garnishment summons on an account held jointly by Plaintiffs.

C.  **Plaintiffs Cannot Establish a Claim for Invasion of Privacy by Intrusion Upon Seclusion.**

Similar to arguments A and B, Plaintiffs cannot show a substantial interference with seclusion of a kind that would be highly offensive to an ordinary, reasonable person, which resulted in a strong objection by the ordinary, reasonable person because Defendants acted lawfully. *Phillips v. Gredahl*, 312 F.3d 357, 363 (8th Cir. 2002); *Bauer v. Ford Motor Credit Co.*, 149 F.Supp.2d 1106, 1109 (D. Minn. 2001).

III. **Summary Judgment is Appropriate because Plaintiffs' Due Process Claims are not Before the Court and Fail Regardless.**

Although implicated in Plaintiffs' brief to the Minnesota Supreme Court, Plaintiffs' due process claims are not before the Court. *Savig*, No. A09-1221, at *26-27 n.16.

Furthermore, it is doubtful that the FDCPA was designed to test the sufficiency of the due process involved in every state garnishment statute. If Plaintiffs have a cause of action against Defendants for defects arising from the state court judgment, those claims must be initially resolved through the existing state court judgment and not through a

7

separate federal court action. *Exxon Mobile Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).

Finally, Minnesota's garnishment laws are constitutional. "No state shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV § 1. Generally, due process requires notice and an opportunity to be heard. *Mitchell v. W. T. Grant Co.*, 416 U.S. 600, 611 (1974). Due process, however, does not require advance notice and/or a hearing before the initial deprivation. *Id.*

### A. A Hearing was Available to Plaintiffs within a Meaningful Time.

The United States Supreme Court has repeatedly emphasized that "due process is flexible and calls for such procedural protections as the particular situation demands." *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976). The determination is made by balancing the private interest affected by state action, the risk of erroneous deprivation under the procedures used, and the government's interest, including consideration of fiscal and administrative burdens. *Id.* at 335.

The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner. *Id.* at 333. The flexibility of due process does not require that the hearing be immediate. *See id.*; *see also Mitchell*, 416 U.S. at 611. Furthermore, "the Court has consistently held that held that some kind of hearing is required at some time before a person is *finally* deprived of his property interests." *Wolff v. McDonnell*, 418 U.S. 549, 557-58 (1974) (emphasis added). "Where only property rights are involved, mere postponement of the judicial enquiry is not a denial of due

8

process, if the opportunity given for ultimate judicial determination of liability is adequate." *Mitchell*, 416 U.S. at 611.

Minnesota's statutes relating to post-judgment proceedings comply with the due process clause of the Fourteenth Amendment. Specifically, Minnesota Statutes section 571.83 allows a non-party claiming an interest in the property attached to intervene in the garnishment proceeding. In this way, a non-debtor account-holder is not at risk of an erroneous final deprivation of property because he may join in the proceeding and have his interests adjudicated in a meaningful time. Instead of doing so in this matter, Robert Savig brought this litigation approximately eighteen days after the funds were retained. Thus, because a hearing was available to Plaintiffs within a meaningful time, due process was provided, and Minnesota garnishment laws comply with the due process clause of the Fourteenth Amendment.

> **B.** **Minnesota Garnishment Laws Provide Sufficient Procedural Safeguards that Satisfy Due Process where Advance Notice is not Given.**
>
> **1.** **Plaintiffs had Notice.**

Mona Savig received a statutory "Exemption Claim Form" in order to claim any assets exempt from attachment. As the Minnesota Supreme Court held, Robert Savig had actual notice of the "garnishment proceeding because of the notice that was sent to Mona" and he "contacted Messerli on January 9, 2009, to complain to the law firm that they had seized his funds in the joint account." *Savig*, No. A09-1221, at *26-27 n.16. Thus, Plaintiffs had sufficient notice to satisfy due process.

9

## 2. Minnesota Garnishment Statutes are Analogous to Prejudgment Garnishment, which is Constitutional.

The Minnesota Supreme Court, relying on a United States Supreme Court decision, held that sufficient procedural safeguards exist in Minnesota's prejudgment garnishment statute; and therefore, it does not violate due process. *Int'l State Bank v. Gamer*, 281 N.W.2d 855, 860 (Minn. 1979) (citing *Mitchell*, 416 U.S. at 600). Those safeguards include, most notably, that only a judge or county court administrator can issue a writ and that the statute provides for an immediate post-seizure hearing. *Id.* at 859.

Similarly, Minnesota garnishment laws provide sufficient due process because safeguards are in place that require a judgment creditor comply with a detailed statutory scheme as well as provide parties with a right to an expedited hearing. Because Minnesota garnishment laws authorize garnishment only if specific steps are followed and give parties the right to an expedited hearing, like prejudgment garnishment, sufficient due process exists. Thus, Minnesota's garnishment statutes are not susceptible to a due process challenge.

## 3. Minnesota Garnishment Statutes are Analogous to Temporary Restraining Orders, which are Constitutional.

Temporary Restraining Orders (TROs) "may be granted without written or oral notice to the adverse party" so long as certain rules are followed. Fed. R. Civ. P. 65.01; Minn. R. Civ. P. 65(b)(1). TROs are constitutional because safeguards are built into the Rules of Civil Procedure. 11A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 2951 (2d ed. 2010). The safeguards include,

10

for example, the requirement that one must apply for a TRO in accordance with the rules of civil procedure, and if granted, a hearing must be set at the earliest possible time. Fed. R. Civ. P. 65.01; Minn. R. Civ. P. 65(b)(3).

The Rules of Civil Procedure are designed to provide the necessary safeguards to ensure that due process is satisfied. Fed. R. Civ. P. 65(b), (c); *Minneapolis Urban League, Inc. v. City of Minneapolis*, 650 F. Supp. 303, 306 (D. Minn. 1986) (holding that if the TRO was validly obtained, its proper execution would not violate plaintiff's property interests without due process). Thus, the grant of a TRO, for which application was made in accordance with the Rules, is highly unlikely to constitute a deprivation of property or rights without due process of law. Monica E. McFadden, 2 Litigating Tort Cases: Injunctions and restraining orders - Due process concerns § 13:27 (2010). The judicial process and the statutes that authorize the issuance of a TRO are sufficient and constitute all the process that is due. *Id.*

Correspondingly, Minnesota garnishment laws provide sufficient due process because similar safeguards are in place. Minnesota garnishment laws require a judgment creditor to take certain steps in compliance with a detailed statutory scheme as well as provide parties with a right to an expedited hearing. Thus, because Minnesota garnishment laws authorize garnishment only if specific steps are followed and provide parties with a right to an expedited hearing, like temporary restraining orders, sufficient due process exists.

## IV. No Genuine Issues of Material Fact Exist in this Case.

Plaintiffs' argument that issuing a levy on an account held jointly by a debtor and non-debtor constitutes harassment, oppression, abuse, deception, or unfairness is illogical. Defendants' actions were lawful as confirmed by the Minnesota Supreme Court. Thus, no question of material fact exists for a jury.

## CONCLUSION

Defendants have shown that Plaintiffs' claims rest on unsuccessful legal theories and that if Plaintiffs had alleged additional claims, those claims would fail as well. Further, Defendants have shown that no genuine issues of material fact exist because they acted lawfully. Thus, Defendants are entitled to judgment as a matter of law and respectfully request that the Court grant their renewed motion for summary judgment.

**MESSERLI & KRAMER, P.A.**

Dated: September 16, 2010.

By: s/ Derrick N. Weber
Derrick N. Weber, #241623
Jennifer M. Zwilling, #389153
3033 Campus Drive, Suite 250
Plymouth, MN 55441
Telephone: (763) 548-7900
Facsimile: (763) 548-7922

**ATTORNEYS FOR DEFENDANTS**

550198.1